UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ROBERT MEDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No: 13-cv-35-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| SHELBY COUNTY, KENTUCKY, | ) | **&** |
| et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In June 2012, Plaintiff Robert Medley suffered a burn wound. At that time, Medley was incarcerated at the Shelby County Detention Center, and another inmate threw water from a hot-pot on him, burning his face and ear. Medley was first treated for the burns at the jail but was taken to the hospital for additional treatment thirteen hours later. At issue is whether various constitutional violations and torts occurred from the time Medley received the burn wounds until the time he was hospitalized. Defendants Shelby County, Kentucky; Shelby County Detention Center; Judge/Executive Rob Rothenberger; Jailer Bobby Waits; and eleven other employees of the Shelby County Detention Center seek summary judgment on all of the Plaintiff's claims. For the reasons set forth below, the Court GRANTS the Defendants' motion.

**I**

**A**

On or around May 8, 2012, Plaintiff Robert Medley was incarcerated at the Shelby County Detention Center ("SCDC") as a pretrial detainee, charged with manufacturing

methamphetamine. [R. 49 at 21.] Medley was housed in a cell with approximately twenty-two other inmates, and his confinement at SCDC was largely without incident for one month. However, on June 9, 2012, Medley recalls lying down on his bunk around 5:30 p.m. to go to sleep but waking to a sensation of ice water hitting him in the face. SCDC allowed hot-pots, electrical devices that can rapidly boil water, within Medley's cell, and fellow inmate Anthony Howell—allegedly unprovoked and without warning—threw hot water from a hot-pot onto the left side of Medley's face. [*Id.* at 48-49; *see also* R. 21 at 6 (alleging water was thrown on Medley's "face, left ear, left eye, left arm, and chest").]

The parties present somewhat different accounts of what occurred next. According to Medley's Second Amended Complaint, "the Jail staff or nurse(s) applied some sort of cream or ointment to the Plaintiff's face and then placed him in isolation for over 13 hours." [R. 21 at 6.] However, Medley's response to the Defendants' summary judgment motion admits he was examined and monitored much more frequently. [*See* R. 58 at 2-3.] Medley's deposition testimony indicates that, to the best of his recollection, SCDC officials Sergeant Ann Doyle, Deputy Larry Donovan, and Deputy Austin Sasser responded to the incident shortly after it occurred. [R. 56-1 at 3.] According to Deputy Sasser's Incident Report, Deputies Sasser and Donovan entered the cell and saw that Medley appeared to be burned from the hot water. Donovan immediately escorted Medley to the SCDC's medical unit, while Sergeant Doyle and Deputy Sasser escorted Howell, the perpetrator, to an interview cell for further investigation. [*Id.* at 3-4.]

At the time of the incident, SCDC contracted with Southern Health Partners ("SHP") to provide medical care to SCDC inmates. SHP Nurse Dana Aldridge was on duty when Medley was burned, and she testified to treating him at approximately 5:45 p.m. for superficial burns to

his face, neck, chest, and back. [*Id.* at 5.] She then notified her supervisor Nurse Angel Robinson and SHP's physician Dr. Ron Waldridge of the incident, and she sent photos of the burns to Dr. Waldridge for his recommendation. [*Id.*; R. 58 at 2.] Dr. Waldridge ordered treatment for Medley's burns, including cold compresses to cool down his skin, Silvadene cream, and Ibuprofen. [R. 56-1 at 5; R. 58 at 2.] Subsequently, Medley was placed in a single cell for observation, which took place at approximately fifteen to twenty minute intervals. [R. 56-1 at 6; R. 58 at 3.]

Nurse Alridge testified that she conducted a follow-up examination of Medley around 6:45 p.m., during which she called Dr. Waldridge to report that Medley "had formed some blisters and complained of not being able to see out of his right eye." [R. 56-1 at 6.] Dr. Waldridge continued to order a treatment of ice packs and cold compresses, Silvadene, and Ibuprofen.[1] [*Id.*] Medley testified that, at some point, Sergeant Doyle applied Silvadene cream to his face, but Sergeant Doyle denied doing so, and Nurse Aldridge's notes and testimony indicate Medley refused Silvadene application both times she examined him. [*Id.*] Nurse Aldridge checked on Medley again before leaving her shift around 10:30 p.m., and she observed him sleeping comfortably and thought the treatment orders from Dr. Waldridge were sufficient to properly care for Medley's injuries. [*Id.*]

Sergeant Ann Doyle, instructed to contact supervising Nurse Robinson if Medley's condition changed, was tasked with monitoring Medley from the time Nurse Aldridge left her shift until 6:00 a.m. the next morning, when SHP Nurse Christina Peach arrived. [*Id.* at 6-7.] On or around 2:00 in the morning, Sergeant Doyle noticed Medley's face had blistered; he was

---

[1] In his deposition, Dr. Waldridge testified that he did not recall being informed Medley's eye was blistered and swollen. He stated he would have recommended Medley be taken to the emergency room if he had known about the blisters and swelling. [*See* R. 58 at 3, n. 1; R. 53 at 11.]

3

dripping fluids and complained he could not see or hear on his left side. [*Id.* at 7; R. 58 at 3.] Sergeant Doyle contacted Nurse Robinson, who instructed Doyle to keep monitoring Medley and to give him Gatorade for hydration until the next SHP shift nurse arrived. [R. 56-1 at 7.] Doyle did not assess the situation as a life-threatening emergency.[2] [*Id.*] Sergeant Doyle spoke on the telephone with Nurse Peach around 5:00 a.m., notifying Peach that she should evaluate Medley as soon as she began her shift at 6:00 a.m. on June 10, 2012. [*Id.* at 8.] When Nurse Peach arrived, Peach called Dr. Waldridge and updated him on Medley's condition. [*Id.*] At that point, Dr. Waldridge ordered Medley be sent to the emergency department. [*Id.*]

Emergency responders transported Medley to the University of Louisville Hospital Emergency Department. Medley arrived around 7:15 a.m. and was treated for second degree burns. [*Id.*; R. 58 at 4.] As a result of his injuries, Medley asserts he "lost all hearing in his left ear and continues to experience bleeding from his left ear requiring repeated medical attention, decreased eye sight from his left eye, and other disabilities on the left side of his face." [R. 21 at 6-7.]

Medley filed suit in June 2013 against numerous defendants, including Shelby County, Kentucky; the SCDC and various SCDC employees; SHP and various SHP employees; and Howell, the inmate who threw the hot-pot water on Medley. [*See* R. 1; R. 21.] Defendants Shelby County, Kentucky; Shelby County Detention Center; County Judge/Executive Rob Rothenberger; Jailer Bobby Waits; and eleven other employees of the Shelby County Detention Center now seek summary judgment on all of Medley's claims.

---

[2] SCDC staff have the authority to transfer inmates who are under SHP's care to the hospital in life-threatening emergency situations. [*See* R. 56-1 at 7, n. 3.] Sergeant Doyle worked previously as an EMT in Shelby County and had also received CPR and first aid training as an employee of SCDC. [*Id.*] She testified that she did not consider Medley's condition during the night and early morning before Nurse Peach arrived to be a life-threatening one. [*Id.* at 7.]

4

**B**

**1**

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

## 2

In his complaint, Medley asserts various violations of his constitutional rights. Such allegations are properly brought under 42 U.S.C. § 1983. Section 1983 does not create substantive rights bur rather "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States. . . ." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Mertik v. Blalock*, 983 F.2d 1353, 1359 (6th Cir. 1993). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Graham v. Connor,* 490 U.S. 386, 394 (1989) (additional citations omitted)).

The Court notes that Medley was a pretrial detainee at the time of the incident, and therefore his constitutional claims are properly analyzed under the Fourteenth Amendment rather than the Eighth Amendment. The Eighth Amendment applies to those who are incarcerated after conviction, and thus does not apply in this context. *See Graham*, 490 U.S. 386. However, both the Sixth Circuit Court of Appeals and the United States Supreme Court have found the

Fourteenth Amendment's due process clause affords pretrial detainees "a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Harbin v. City of Detroit*, 147 F. App'x 566, 569 (6th Cir. 2005) (citing *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003)). Whether the claim is brought under the Eighth or Fourteenth Amendment, "[w]here prison [or jail] officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment . . . ." *Vaughn v. City of Lebanon*, 18 F. App'x 252, 272 (6th Cir. 2001). Consequently, Plaintiff's claim of deliberate indifference to his medical needs is properly brought under the Fourteenth Amendment, but is analyzed under the same standards employed in evaluating Eighth Amendment claims concerning cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 545 (1979); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).

### 3

Federal qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To evaluate such claims, courts generally apply a two-step analysis. First, the court considers whether "[t]aken in a light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court asks whether the right at issue was "clearly established." *Id.*

Although at one time courts were required to follow these steps sequentially, the Supreme Court has abandoned that position and now permits courts to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in

light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.  In this case, the Court begins by addressing whether the facts, cast in a light most favorable to Plaintiff Medley, demonstrate a constitutional violation by the Defendants.  As explained below, the Court finds no constitutional violations on behalf of the Defendants.  The second prong of the qualified immunity analysis, therefore, need not be addressed in order for the Court to resolve the summary judgment motion.

## II

### A

Though Medley broadly alludes to several constitutional violations in Count I of his complaint [R. 21 at 7-8], his chief allegation appears to be deliberate indifference to his medical needs.  Because Medley's complaint does not explain which defendants he wishes to hold liable for which claims, the Court, like the Defendants, assumes that Medley is bringing his claim for deliberate indifference against all named individuals.  To succeed on a claim of deliberate indifference to medical needs, Medley must show that he had "an objectively substantial risk of serious harm," and that the named defendants were "subjectively aware of the risk." *Harbin*, 147 F. App'x at 570.  That is, the defendants must have a culpable state of mind—each individual must have known and disregarded an "excessive risk to [Medley's] health or safety" in order to be found personally liable.  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

To satisfy the first, objective component of the test, Medley must show "the existence of a 'sufficiently serious' medical need." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).  This medical need can be "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)).

Medley argues his burns were so severe that "[c]learly, even a lay person would recognize a blistered and eye swollen shut as a serious medical condition requiring more treatment than that which was being provided at the jail." [R. 58 at 11.] Medley relies on the depositions of Nurse Dana Aldridge and Dr. Ron Waldridge to support his argument, and he insists he should have been taken to the emergency room much sooner than he was. [*See id.* at 9-11.] But even if Medley can demonstrate the objective severity of his burn wounds, he must still prove the Defendants were subjectively culpable. *Harbin*, 147 F. App'x at 570. Based on the evidence in the record, a reasonable jury could not find the second prong of the test satisfied.

To begin, two of the individuals named in Medley's complaint are Shelby County Judge/Executive Rob Rothenberger and Shelby County Jailer Bobby Waits, both sued in their individual capacities. Because both individuals are government officials, they may only be personally liable on a § 1983 claim if they were *personally involved* in violating Medley's constitutional rights. The Supreme Court has clearly explained that a government official is only liable for a § 1983 claim where he or she personally "caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Accordingly, the Sixth Circuit has clarified that § 1983 liability may not be imposed under the theory of *respondeat superior*; instead, "proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun County*, 408 F.3d 803, 817 n. 3 (6th Cir. 2005) (citing *Taylor v. Mich. Dept. of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995)).

Medley has not demonstrated Rothenberger or Waits were personally involved with any medical treatment or with the hot-pot incident. There is no evidence that either of the men were present when the incident occurred or that they personally encountered Medley during the relevant timeframe. Further, there is no evidence that either Jailer Waits or Judge/Executive

9

Rothenberger somehow implicitly authorized or acquiesced to a deprivation of proper medical care. *See Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993) (finding, "at a minimum," a government official must have "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" in order to be held liable). Because Medley has not proven any personal involvement on the part of either Waits or Rothenberger, he has not established a constitutional violation. Therefore, the Court grants Waits and Rothenberger summary judgment on the deliberate indifference claim.

Medley also fails to prove deliberate indifference on the part of Sergeant Ann Doyle. Medley admits mere negligence is insufficient to establish deliberate indifference, but he sets forth no facts to suggest Doyle culpably disregarded Medley's medical condition. [*See* R. 58 at 11-12.] The record demonstrates that Doyle attentively cared for Medley; she frequently monitored his condition and followed the instructions of SHP as to Medley's medical treatment. When Doyle recognized Medley's condition was worsening, she proactively took steps to aid the treatment process. She called Nurse Robinson and Nurse Peach, and she took photographs of Medley's condition throughout the night and early morning to show to Peach the next day. [*See* R. 56-1 at 7-8.] Medley has not refuted these facts and has not demonstrated the subjective culpability needed to succeed on a deliberate indifference claim against Sergeant Doyle. Therefore, she is also entitled to summary judgment on this claim.

Finally, there is no evidence to suggest the ten other deputies disregarded a substantial risk to Medley's health and safety so as to violate his constitutional rights. As explained above, even if Medley could demonstrate that his burns constituted a sufficiently serious medical need, he must still prove the deputies were subjectively aware of the medical need and disregarded it.

*Harbin,* 147 F. App'x at 570. Medley has failed to prove the second prong for any of the ten remaining individuals.

No evidence in the record suggests that Deputies Brent Waldridge, Mike Johnson, Celeste Petitt, or Wanda Jones had any personal interaction with Plaintiff Medley at all or ever observed his medical state; therefore, they cannot be found liable on a deliberate indifference claim. To the extent the other deputies personally interacted with Medley during the relevant timeframe, the record does not reflect any subjective culpability. Bobby McCurdy rode in the back of the ambulance with Medley to the hospital and sat with him in the emergency room. [R. 49.] Nikki Larkin brought an order of release to the hospital for Medley to sign while he was being treated there on the morning of June 10, 2012. [*Id.*; R. 56-9.] Austin Sasser, Larry Donovan, Lillian Thornton, and Jo Swain all performed a handful of cell checks on Medley from the time he was burned until he was taken to the hospital. These individuals who personally observed Medley could have at least been in a better position to observe his medical condition than Deputies Waldridge, Johnson, Petitt, or Jones. However, nothing in the record suggests these deputies knew or had reason to know of the severity of Medley's burns and disregarded the seriousness of the situation.

Importantly, Medley does not refute or otherwise respond to the evidence presented by the Defendants in their summary judgment motion regarding the involvement and potential culpability of each of the ten deputies. [*See* R. 58.] Finding nothing in the record contrary to what Defendants have offered, the Court concludes the deputies are also entitled to summary judgment on the deliberate indifference claim.

**B**

Medley also argues his constitutional rights were violated because Shelby County, the Shelby County Detention Center, and the relevant "supervisory officials" failed to properly train the employees responsible for his care. [R. 21 at 5.] The complaint does not expressly indicate which Defendants constitute the "supervisory officials" he wishes to hold liable, so the Court assumes he refers to Judge/Executive Rothenberger and Jailer Waits, those defendants whose jobs entail clear supervisory authority. Whether Medley intended to sue Rothenberger and Waits in their official capacities as well as their individual capacities is unclear. But to the extent that Medley brings charges against any of the individual defendants in their official capacities, those charges are functionally equivalent to his allegations against Shelby County and the Shelby County Detention Center. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Graham*, 473 U.S. at 165) ("Individuals sued in their official capacities stand in the shoes of the entity they represent."); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."). Thus, the Court considers any claims against a Defendant in his official capacity alongside Medley's claims against Shelby County and the SCDC.

Section 1983 liability for a failure to train or supervise lies where the allegedly unconstitutional action is a result of an unconstitutional "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the local governing body's] officers," or through an informally adopted governmental custom. *Johnson v. Hardin Cnty., Ky.*, 908 F.2d 1280, 1285 (6th Cir. 1990) (quoting *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690-91 (1978)) (internal quotation marks omitted). Defendants Rothenberger and Waits cannot be liable under § 1983 on the basis of *respondeat superior* liability. *See Monell*, 436 U.S. at 691. Instead,

12

they will only be liable if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* Consequently, Medley must establish both that his constitutional rights were violated and that a policy or custom of Shelby County or the SCDC was the "moving force" behind the violation of his rights. *Bozung v. Rawson*, 439 F. App'x 513, 521 (6th Cir. 2011) (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010)).

Medley has not put forth sufficient evidence to satisfy this test and survive the Defendants' motion for summary judgment. Before the Court can determine whether the policies of Shelby County or the Shelby County Detention Center deprived Medley of his constitutional rights, there must be some evidence that a constitutional violation actually occurred. As explained in detail above, Medley has not established that any of the defendants acted with deliberate indifference to his medical needs. "If the individual defendants have violated no constitutional right, the municipality cannot be liable under 1983 for a failure to train." *Cooper v. Cnty. Of Washtenaw*, 222 F. App'x 459, 473 (6th Cir. 2007).

Further, even if Medley was able to demonstrate a constitutional violation occurred, he must still establish a policy or custom of Shelby County or the SCDC was the "moving force" behind the violation. *See Bozung*, 439 F. App'x at 521. To prevail on such a claim, Medley must prove the following three things: "that the training program at issue is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is closely related to or actually caused the plaintiff's injury." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992) (internal quotations omitted) (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989); *City of Canton, Ohio v. Harris*, 489 U.S. 379, 388 (1989)); *see also Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

Medley argues SCDC wrongly shifted its responsibility of inmate medical treatment to SHP and this shift amounted to a constitutional violation. He asserts "[h]ad Shelby County not relinquished its responsibilities and had a better policy taking into consideration the special training and knowledge of its own employees Medley could have been allowed to receive outside medical treatment sooner." [R. 58 at 17.] Medley essentially asks the Court to draw an inference that Sergeant Doyle, a former EMT with medical training, "had serious concerns" about Medley's medical condition but that an SCDC policy forced her to "let SHP provide whatever inadequate medical treatment" it deemed fit. [*Id.*]

The Court finds little support for this inference in the record. SCDC employees possess the authority to send inmates to the emergency room in life-threatening situations and have exercised that authority in the past. [*See* R. 56-1 at 28.] In this case, even though Sergeant Doyle noticed Medley's condition was worsening, Doyle did not believe Medley's situation to be life-threatening. [*Id.* at 7.] Medley may disagree with Sergeant Doyle's analysis of his medical state, but he has put forth no proof that Doyle refrained from sending him to the hospital because a particular Shelby County or SCDC policy was inadequate. After examining the evidence in the record, the Court finds Medley's failure to train or supervise claim does not survive the Defendants' motion.

**C**

In the motion for summary judgment, the Defendants identify and respond to a possible failure to protect claim in Medley's complaint. Though Medley makes vague references to the SCDC's failure to "protect[] inmates like Plaintiff from harm" in a section of his complaint entitled "Nature of Defendants' Conduct," he does not explicitly name a failure to protect claim

14

as one of his several causes of action, and he never mentions such a claim in his response to the Defendants' summary judgment motion.

The Sixth Circuit has indicated that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (internal quotations and citations omitted). Additionally, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.* To the extent Medley may have initially desired to bring a constitutional claim for failure to protect, the Court finds that claim to be waived and grants summary judgment for the Defendants.

**D**

Finally, the Court must address the remaining state law claims. Medley asserts claims of deliberate indifference, gross negligence, outrage, intentional infliction of emotional distress, assault, and battery against the Defendants who bring this motion for summary judgment. The Defendants argue any state law claim brought against Shelby County or SCDC fails due to sovereign immunity. [R. 56-1 at 34.] Plaintiff Medley does not dispute the application of the doctrine of sovereign immunity, so the Court will not consider the issue. Medley does, however, take issue with the Defendants' contention that the SCDC employees, Judge/Executive Rob Rothenberger, and Jailer Bobby Waits are entitled to qualified immunity for the state law claims brought against them in their individual capacities.

"[T]he supervision of prisoners is a discretionary act and entitles those in that position to qualified immunity." *Jerauld ex rel. Robinson v. Kroger*, 353 S.W.3d 636, 640 (Ky. Ct. App. 2011) (citing *Rowan Cnty. v. Sloas*, 201 S.W.3d 469 (Ky. 2006). Once an act is determined to have been performed within an official's discretionary authority, "the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act [was performed in bad faith]." *Rowan Cnty.*, 201 S.W.3d at 481. To meet this burden, Medley must show there was "some implication of self-interest, or of deliberate indifference, or sinister motive, rather than an honest mistake or oversight." *Id.* at 485.

Instead of presenting any evidence of bad faith, Medley argues only that the Defendants' actions were ministerial rather than discretionary. [R. 58 at 12-15.] Such an argument is contrary to the clear precedent of Kentucky state and federal courts described above. *See, e.g., Kroger*, 353 S.W.3d at 640; *Estate of Goodin v. Knox Cnty.*, No. 12-18-GFVT, 2014 WL 2719816, at *15 (E.D. Ky. June 16, 2014). Indeed, Medley focuses all of his efforts on this losing argument and fails entirely to address his burden of proving bad faith. Even when considering the facts in the light most favorable to Medley, the Court finds Medley has not demonstrated a genuine issue of material fact regarding the Defendants' qualified immunity from the state law claims. Accordingly, the Defendants receive summary judgment on Medley's state law claims.

## III

For the foregoing reasons, Plaintiff Medley has not established a genuine issue of material fact related to any of his claims against Shelby County, the SCDC, Judge/Executive Rothenberger, Jailer Waits, and the eleven named SCDC employees. Because Medley has not satisfied the test for federal qualified immunity, the Defendants will not be held liable on his §

16

1983 claims for constitutional violations.  Additionally, Medley has not proven the Defendants are barred from asserting qualified immunity on the state law claims.  The Court being sufficiently advised, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment [R. 56] is **GRANTED,** with a Judgment to be entered contemporaneously herewith.  This Order does not affect Medley's claims against the remaining Defendants who did not join in the immediate motion.

      This the 28th day of January, 2016.

Gregory F. Van Tatenhove
United States District Judge