UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ROBERT MEDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No: 13-cv-35-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| SHELBY COUNTY, KENTUCKY, | ) | **&** |
| et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon the Motion for Summary Judgment [R. 55] filed by Southern Health Partners, Inc. Defendant Southern Health Partners contracted with the Shelby County Detention Center to provide healthcare to inmates during the time Plaintiff Robert Medley was incarcerated there and sustained a burn wound. Medley alleges a constitutional violation of deliberate indifference to his medical condition as well as a claim for medical malpractice against Southern Health Partners. Having reviewed the record, the Court GRANTS the Defendant's request for summary judgment.

**I**

**A**

On or around May 8, 2012, Plaintiff Robert Medley was incarcerated at the Shelby County Detention Center ("SCDC") as a pretrial detainee, charged with manufacturing methamphetamine. [R. 49 at 21.] Medley was housed in a cell with approximately twenty-two other inmates, and his confinement at SCDC was largely without incident for one month.

However, on June 9, 2012, Medley recalls lying down on his bunk around 5:30 p.m. to go to sleep but waking to a sensation of ice water hitting him in the face. SCDC allowed hot-pots, electrical devices that can rapidly boil water, within Medley's cell, and fellow inmate Anthony Howell—allegedly unprovoked and without warning—threw hot water from a hot-pot onto the left side of Medley's face. [*Id.* at 48-49; *see also* R. 21 at 6 (alleging water was thrown on Medley's "face, left ear, left eye, left arm, and chest").]

The parties present somewhat different accounts of what occurred next. According to Medley's Second Amended Complaint, "the Jail staff or nurse(s) applied some sort of cream or ointment to the Plaintiff's face and then placed him in isolation for over 13 hours." [R. 21 at 6.] However, Medley's response to the Defendants' summary judgment motion admits he was examined and monitored much more frequently. [*See* R. 58 at 2-3.] Medley's deposition testimony indicates that, to the best of his recollection, SCDC officials Sergeant Ann Doyle, Deputy Larry Donovan, and Deputy Austin Sasser responded to the incident shortly after it occurred. [R. 56-1 at 3.] According to Deputy Sasser's Incident Report, Deputies Sasser and Donovan entered the cell and saw that Medley appeared to be burned from the hot water. Donovan immediately escorted Medley to the SCDC's medical unit, while Sergeant Doyle and Deputy Sasser escorted Howell, the perpetrator, to an interview cell for further investigation. [*Id.* at 3-4.]

At the time of the incident, SCDC contracted with Southern Health Partners ("SHP") to provide medical care to SCDC inmates. SHP Nurse Dana Aldridge was on duty when Medley was burned, and she testified to treating him at approximately 5:45 p.m. for superficial burns to his face, neck, chest, and back. [*Id.* at 5.] She then notified her supervisor Nurse Angel Robinson and SHP's physician Dr. Ron Waldridge of the incident, and she sent photos of the

2

burns to Dr. Waldridge for his recommendation. [*Id.*; R. 58 at 2.] Dr. Waldridge ordered treatment for Medley's burns, including cold compresses to cool down his skin, Silvadene cream, and Ibuprofen. [R. 56-1 at 5; R. 58 at 2.] Subsequently, Medley was placed in a single cell for observation, which took place at approximately fifteen to twenty minute intervals. [R. 56-1 at 6; R. 58 at 3.]

Nurse Alridge testified that she conducted a follow-up examination of Medley around 6:45 p.m., during which she called Dr. Waldridge to report that Medley "had formed some blisters and complained or not being able to see out of his right eye." [R. 56-1 at 6.] Dr. Waldridge continued to order a treatment of ice packs and cold compresses, Silvadene, and Ibuprofen.[1] [*Id.*] Medley testified that, at some point, Sergeant Doyle applied Silvadene cream to his face, but Sergeant Doyle denied doing so, and Nurse Aldridge's notes and testimony indicate Medley refused Silvadene application both times she examined him. [*Id.*] Nurse Aldridge checked on Medley again before leaving her shift around 10:30 p.m., and she observed him sleeping comfortably and thought the treatment orders from Dr. Waldridge were sufficient to properly care for Medley's injuries. [*Id.*]

Sergeant Ann Doyle, instructed to contact supervising Nurse Robinson if Medley's condition changed, was tasked with monitoring Medley from the time Nurse Aldridge left her shift until 6:00 a.m. the next morning, when SHP Nurse Christina Peach arrived. [*Id.* at 6-7.] On or around 2:00 in the morning, Sergeant Doyle noticed Medley's face had blistered; he was dripping fluids and complained he could not see or hear on his left side. [*Id.* at 7; R. 58 at 3.] Sergeant Doyle contacted Nurse Robinson, who instructed Doyle to keep monitoring Medley and

---

[1] In his deposition, Dr. Waldridge testified that he did not recall being informed Medley's eye was blistered and swollen. He stated he would have recommended Medley be taken to the emergency room if he had known about the blisters and swelling. [*See* R. 58 at 3, n. 1; R. 53 at 11.]

3

to give him Gatorade for hydration until the next SHP shift nurse arrived. [R. 56-1 at 7.] Doyle did not assess the situation as a life-threatening emergency.[2] [*Id.*] Sergeant Doyle spoke on the telephone with Nurse Peach around 5:00 a.m., notifying Peach that she should evaluate Medley as soon as she began her shift at 6:00 a.m. on June 10, 2012. [*Id.* at 8.] When Nurse Peach arrived, Peach called Dr. Waldridge and updated him on Medley's condition. [*Id.*] At that point, Dr. Waldridge ordered Medley be sent to the emergency department. [*Id.*]

Emergency responders transported Medley to the University of Louisville Hospital Emergency Department. Medley arrived around 7:15 a.m. and was treated for second degree burns. [*Id.*; R. 58 at 4.] As a result of his injuries, Medley asserts he "lost all hearing in his left ear and continues to experience bleeding from his left ear requiring repeated medical attention, decreased eye sight from his left eye, and other disabilities on the left side of his face." [R. 21 at 6-7.]

Thus far in the litigation, the Court has granted judgment on the pleadings to Dr. Waldridge, Nurse Aldridge, and Nurse Peach [R. 44] and summary judgment to the Shelby County and SCDC Defendants [R. 65]. Now the Court considers SHP's dispositive motion, which also seeks summary judgment on all of Medley's claims.

**B**

**1**

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

---

[2] SCDC staff have the authority to transfer inmates who are under SHP's care to the hospital in life-threatening emergency situations. [*See* R. 56-1 at 7, n. 3.] Sergeant Doyle worked previously as an EMT in Shelby County and had also received CPR and first aid training as an employee of SCDC. [*Id.*] She testified that she did not consider Medley's condition during the night and early morning before Nurse Peach arrived to be a life-threatening one. [*Id.* at 7.]

4

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of

material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

**2**

As the Court explained in its ruling on the Shelby County Defendants' summary judgment motion, Medley's constitutional claims are properly brought under 42 U.S.C. § 1983. Because Medley was a pretrial detainee when the incident occurred, his constitutional claims should be considered under the Fourteenth Amendment rather than Eighth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). The Sixth Circuit Court of Appeals and the United States Supreme Court have indicated that the Fourteenth Amendment's due process clause affords pretrial detainees "a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Harbin v. City of Detroit*, 147 F. App'x 566, 569 (6th Cir. 2005) (citing *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003)). Consequently, Medley's claim for deliberate indifference to his medical needs is properly brought under the Fourteenth Amendment, but is analyzed under the same standards employed in evaluating Eighth Amendment claims concerning cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 545 (1979); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).

**II**

**A**

The Court first considers the constitutional claim raised against SHP. Medley asserts deliberate indifference to his serious medical needs on the part of all named Defendants, including SHP. To succeed on a claim of deliberate indifference against SHP, Medley must satisfy two separate legal tests. First, he must prove deliberate indifference. To do this, Medley

6

must show that he had "an objectively substantial risk of serious harm" and that SHP was "subjectively aware of the risk." *Harbin*, 147 F. App'x at 570.  Second, because SHP is a private corporation, he must demonstrate that an official policy or custom of the corporation caused the alleged deprivation of his constitutional rights. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005); *see also Hamilton v. Pike Cnty., Ky.*, No. 11-99-ART, 2013 WL 529936, at *8-9 (E.D. Ky. Feb. 11, 2013).  Medley has failed to satisfy either test.

First, Medley has not established deliberate indifference to his medical needs.  As mentioned above, the standard for this constitutional violation involves both an objective and a subjective component.  Medley argues he had "an objectively substantial risk of serious harm" that was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)).  Even if this is true, however, Medley must still establish SHP was subjectively aware of the situation, culpably disregarding an "excessive risk to [Medley's] health or safety." *Harbin*, 147 F. App'x at 570 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Regarding this second subjective component, Medley's response to SHP's summary judgment motion contains conclusory statements but little evidence.  [*See, e.g.*, R. 57 at 10.] Nowhere in his memorandum does Medley explain how or why SHP was subjectively culpable. Further, SHP as a corporate defendant may only be liable if an official policy, custom, or practice of SHP caused the constitutional violation. *Karnes*, 398 F.3d at 877.  Even if Medley could prove a constitutional violation occurred, the statement he offers to prove this second legal standard amounts to little more than a bare assertion.

7

Medley argues"[t]here is ample evidence to show a practice, as evidenced by Nurse Peach, that medical care was suffering and there is ample controverted evidence to suggest inadequate medical care, negligence, delay and malpractice." [R. 57 at 12.] Medley seems to be referring to certain statements in Nurse Peach's deposition, where Peach described a policy instituted by Supervising Nurse Angel that required caregivers to contact Angel prior to contacting Dr. Waldridge directly. [*See id.* at 11.] Peach believed the policy wrongfully slowed patient care [*id.*], and Medley ostensibly agrees. However, Medley does not explain if or how this particular policy implemented by Supervising Nurse Angel motivated or caused an unconstitutional indifference to his medical state. He points to no specific evidence in the record to overcome the arguments made by SHP, and the Court need not go search for fact issues or additional evidence contrary to what SHP has provided. *See In re Morris*, 260 F.3d at 655 (holding the Court has no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact" and that "the nonmoving party has an affirmative duty to direct the court's attention" to the relevant portions of the record). Accordingly, the Court finds summary judgment for SHP is appropriate on Medley's deliberate indifference claim.

**B**

The Court next considers Medley's medical malpractice claim against SHP.[3] "Under Kentucky law, a plaintiff alleging medical malpractice must prove that a medical provider failed to adhere to the standard of care of a reasonably competent practitioner in the same medical field, proximately causing the plaintiff injury." *Matthews v. Robinson*, 52 F. App'x 808, 809-10 (6th Cir. 2002) (citing *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982); *Blair v. Eblen*, 461

---

[3] Count VI of Medley's complaint alleges medical malpractice against SHP, "by and through their respective employees, Dana Aldridge, Christina Peach, and Dr. Ron Waldridge, and/or unknown doctor(s) and/or unknown nurse(s)." The individual SHP employees named as Defendants were granted judgment on the pleadings in April 2015, because Medley's claims against them were time-barred. [*See* R. 44.]

S.W.2d 370, 373 (Ky. 1970)).  To do so, a plaintiff ordinarily must put forth expert testimony. *Id.*  Notably, the Sixth Circuit has stated Kentucky law "requires expert evidence to survive summary judgment on a medical-malpractice claim." *Wooler v. Hickman Cnty., Ky.*, 377 F. App'x 502, 507 (6th Cir. 2010) (citing *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. App. 2006) ("To survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper.")).

Medley has not presented any expert medical testimony related to this claim.  However, he argues no expert testimony is needed to overcome SHP's summary judgment motion because this case falls within a *res ipsa loquitur* exception to the expert witness rule.  [R. 57 at 8-9.]

Indeed, Kentucky recognizes two *res ipsa loquitur* exceptions to the expert witness rule in medical malpractice cases.  *Begley*, 203 S.W.3d at 170.  One exception arises where "any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care."  *Id.*  This exception is illustrated by cases "where the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy."  *Id.*  The second exception applies where "medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters," such as where a "defendant doctor makes admissions of a technical character from which one could infer that he or she acted negligently."  *Id.* at 170-71.

Neither exception applies in this case.  The second exception is clearly inapplicable, and Medley has not persuaded the Court the first exception is warranted here either.  Medley's situation is not one where a foreign object was inadvertently left in his body during surgery or where the wrong part of his body was treated.  *See id.* at 170.  Instead, the heart of Medley's argument is that he should have been taken to the hospital sooner or treated differently for his

9

burns. Courts usually find situations regarding the necessity of performing a medical procedure or a failure to diagnose a particular disease to require expert testimony. *See Wheeler v. Baptist Healthcare Sys., Inc.*, 14 F. App'x 559, 561-562 (6th Cir. 2001) (comparing numerous cases where the first *res ipsa loquitur* exception applied with other cases where expert testimony was required). The Court cannot find a lay person could conclude whether or not Medley should have been taken to the hospital sooner than he was. Likewise, a lay person could not conclude whether an SHP nurse or physician should have recognized and treated the severity of his burns differently, without the aid of expert testimony. Accordingly, a *res ipsa loquitur* exception does not apply to the case, and Medley is required to present expert testimony to overcome SHP's summary judgment motion. Because he has not done so, summary judgment on the medical malpractice claim is appropriate.

## C

Medley's complaint also asserts state law claims of negligence, outrage, intentional infliction of emotional distress, assault, and battery. [R. 21.] Although SHP generally responds to these claims, the complaint asserts them only against "the individual Defendants" [*see id.*], and Medley does not address any of the claims in his response to SHP's summary judgment motion. Consequently, the Court finds that, to the extent Medley wished to assert these state law claims against SHP as a corporate defendant, the claims are waived, and summary judgment is proper. *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (indicating issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" may be deemed waived).

## III

In conclusion, Plaintiff Medley has failed to present sufficient evidence in the record to

create any genuine issues of material fact and to overcome Defendant SHP's motion for summary judgment. As a result, and the Court being sufficiently advised, it is hereby **ORDERED** that the Defendant's Motion for Summary Judgment [**R. 55**] is **GRANTED**, with a Judgment to be entered contemporaneously herewith. This Order does not affect Medley's claims against the remaining Defendant(s) who did not join in the immediate motion.

This the 2nd day of February, 2016.

Gregory F. Van Tatenhove
United States District Judge